HAZEL BRIDGES CHEWNING v. JASPER C. CHEWNING

No. 7320SC670

(Filed 27 December 1973)

1. **Courts § 21— accident in South Carolina — what law governs**

The substantive rights and liabilities of the parties are to be determined by the laws of South Carolina in a wife's action against the husband to recover damages for personal injuries sustained by her when the husband's truck, which she was driving, overturned in South Carolina, notwithstanding the only negligence alleged in plaintiff's complaint was defendant husband's failure to warn her of the defective condition of a tire and that negligence first occurred in this State.

2. **Automobiles § 92— automobile guest statute — wife who was driving vehicle**

The mere facts that plaintiff was the wife of defendant and that she was the driver of her husband's vehicle at the time the accident occurred did not preclude her from being his "guest without payment" within the meaning of the South Carolina Automobile Guest Statute.

3. **Automobiles § 92— automobile guest statute — burden of proof**

The occupant of a vehicle who claims that an automobile guest statute is not applicable has the burden of proving that his status was not that of a guest.

4. **Automobiles § 92— wife as guest**

Plaintiff wife was her husband's "guest" while accompanying him in a truck to South Carolina to buy produce for his store where the evidence showed that the truck belonged to the husband and was used by him in his business, in which she had no ownership interest, that she accompanied him only rarely while he used the truck for business purposes, and that she accepted his invitation to accompany him solely for purposes of sociability and companionship.

5. **Automobiles § 92— applicability of guest statute — proof required**

Where the South Carolina Automobile Guest Statute applied, plaintiff could not prevail upon a mere showing of simple negligence but had to show that the accident which caused her injury was either intentional on the part of defendant or that it was caused by his heedless and reckless disregard of the rights of others.

6. **Automobiles § 92; Negligence § 7— automobile guest statute — wanton negligence — operation of vehicle with slick tire**

Evidence that defendant continued operation of his vehicle after he knew one of his tires was slick was insufficient to support a verdict that defendant was guilty of wanton misconduct such as to evince a reckless indifference to the safety of others.

APPEAL by plaintiff from *McConnell, Judge,* 26 February 1973 Civil Session of Superior Court held in ANSON County.

This is a civil action in which plaintiff-wife seeks to recover damages from defendant-husband for personal injuries sustained by her on 17 June 1968 when her husband's pickup truck, which she was driving, overturned in a single car accident on South Carolina Highway #145. The parties are and were at the time of the accident married to each other and reside together as husband and wife in Anson County, North Carolina, in which County plaintiff instituted this action on 10 September 1970. In her original complaint plaintiff alleged that defendant was the owner of the truck, that on and prior to the date of the accident the right rear tire on the truck was "slick, bald, defective and in a dangerous state of disrepair," that defendant knew

of the defective condition of the tire but failed to warn the plaintiff, that defendant requested her to drive the truck and that she agreed to do so without knowing about the defective condition of the tire, and that the right rear tire blew out and caused plaintiff to lose control of the truck so that it overturned and caused her injuries. By amendment to the complaint, which the court allowed plaintiff to file on 26 February 1973, plaintiff alleged that defendant, after having knowledge of, or after by exercise of ordinary care he should have had knowledge of, the defective condition of the tire, did "wilfully and wantonly and in reckless disregard of the rights and safety of others" fail "to replace said defective tire and continued to operate his said motor vehicle on the public highways of South Carolina in said defective condition in violation of the Statutes of South Carolina in such cases made and provided."

Defendant filed answer in which he denied knowledge of any defective condition of the tire, denied that the tire was in fact defective, and, among other defenses, alleged contributory negligence on the part of the plaintiff in failing to inspect the tires after having opportunity to do so and in operating the vehicle after she had the same information as was available to defendant as to any defects in the tire.

At the trial before judge and jury, plaintiff testified in substance to the following:

At the time of the accident she was thirty-eight years old. She and her husband had been married since 1950 and have two children. Her husband owned and operated a produce and grocery store near Lilesville, N. C., and they lived in the back of it. She owned no interest in the business, but she got her "living." She attends her housework and when her husband asks her to help in the store, she does, but he does not pay her any salary nor does she share in any profits of the business. As part of his business, her husband owns a one-half ton pickup truck. He goes to produce markets and she "just occasionally" goes with him. On 17 June 1968 her husband invited her to accompany him to the Columbia, S. C., produce market. Until that date she had not been on a trip with her husband previously during that year. On that day they arrived at the market about 10:30 a.m., and while her husband was loading produce in the truck, she went to a restaurant to get sandwiches for both of them. When she returned, the truck was loaded and the load was covered with a canvas. After the accident her husband told her

he had on the truck 100 watermelons which weighed "about 15 and 20 pounds each," 100 cantaloupes, "that he figured weighed about 3 pounds each" a sack of potatoes, which weighed 50 pounds and a hamper of peas "that generally weighed 20-25 pounds." Prior to the accident her husband did not tell her about the condition of the tire on the truck.

On the return trip at about Camden, S. C., her husband advised her he did not feel too good, pulled off on the roadside, and asked her to drive. She slid over on the seat, and her husband got out and went around the truck and got in on the passenger side. He instructed her to drive "somewhere between forty and fifty." She drove 25 miles to the intersection of U. S. Highway #1 and S. C. Highway #145, and then proceeded north on Highway #145 some fifteen miles. The weather was "real nice and hot," "the temperature was probably 85° or somewhere in that neighborhood," and S. C. Highway #145 along which they were traveling was tar and gravel, hilly in places, and level in other places. When she reached a point a few miles south of Chesterfield, S. C., and while she was driving "around thirty-five and not over forty," and going down a little hill, "all at once it sounded like dynamite exploded and the truck immediately went to her left" and she was unable to hold it. Her husband reached over and took hold of the steering wheel and pulled it back toward the right, and as the truck started to the right, he let go of the steering wheel. The truck went down the shoulder some fifteen or twenty feet, started coming back onto the highway to its left again, and then started turning over, which it did "some three or four times." As a result, plaintiff was injured, was unable to move, and had to be taken out of the truck by the ambulance drivers.

At the scene of the accident and after her husband had gotten out of the truck and walked around it, he came back and told plaintiff that the right rear tire had blown out and caused the accident. She had never had occasion to examine the tires on the pickup. Prior to the accident defendant never told her he had a slick tire on his truck. After the accident he told her that it was slick, a recap, that it should not have been on the truck to begin with, that he should have changed the tire and was intending to do so on the next day, but that he had been busy with farming and hauling peaches and produce and just had not had time to have it changed.

Robert Pickett, a seventeen-year-old boy who occasionally worked part time in the store, testified that he was with the defendant some three weeks prior to the accident when they noticed the tire and "at that time Mr. Chewning stated that the tire needed changing because the rubber was kind of slick."

Herbert Short, operator of Wadesboro Tire Service, testified that he had originally sold defendant the tire, plaintiff's Exhibit #11, identified as being the right rear tire on the truck at the time of the accident, and had recapped it once. Over defendant's objection, this witness was held by the court to be qualified to testify as an expert to give an opinion as to the reason for tire failures. He testified that in his opinion the tire had blown out because it was slick, that a slick tire would run hotter than a tire with a regular tread, that heat builds up pressure in a tire, and that the tire blew out "because it was possibly overloaded."

Defendant, testifying as a witness for the plaintiff, testified in substance as follows: On 17 June 1968 the right rear tire on his truck "was in bad shape but he did not discover that it was in as bad shape as it was until after it blowed out." About a month before the accident, when the truck was jacked up at a service station for an oil change, he looked under it and "noticed that the right rear tire was worn down right bad," and he intended to replace the tire upon seeing the condition it was in. The tire had been on the truck since June 1966, and had been recapped in 1967. He did not remember ever mentioning to his wife before the accident that the right rear tire on the truck was worn out. On 17 June 1968 "he knew that the right rear tire of the truck was worn badly, but he did not realize how bad." He used the truck in his business and many times drove to the Columbia, S. C., produce market. On 17 June 1968 he invited his wife to go with him. That was the first and only time that Mrs. Chewning went with him to the produce market that year. She went with him last year one time. At the time of the accident he had less produce on the truck than he normally had.

Defendant's testimony as to the events leading up to the accident and as to the accident itself was substantially the same as that given by his wife. Defendant was also injured in the accident.

Evidence was also presented as to the nature and extent of plaintiff's injuries.

At the close of plaintiff's evidence, defendant moved for a directed verdict on the grounds that plaintiff's evidence failed to show actionable negligence on the part of the defendant and "even if there was a showing of actionable negligence, there was a clear and distinct showing for contributory negligence." The motion was granted, and from judgment dismissing her claim, plaintiff appealed.

*C. Rouse Pusser, E. A. Hightower; and Taylor & McLendon by H. P. Taylor, Jr., for plaintiff appellant.*

*Leath, Bynum & Kitchin by Henry L. Kitchin for defendant eppellee.*

PARKER, Judge.

[1]  Plaintiff's right of action being transitory, the substantive rights and liabilities of the parties are to be determined in accordance with the laws of South Carolina, the *lex loci. Frisbee v. West,* 260 N.C. 269, 132 S.E. 2d 609; *Harper v. Harper,* 225 N.C. 260, 34 S.E. 2d 185; *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11; *Howard v. Howard,* 200 N.C. 574, 158 S.E. 101. The suggestion that North Carolina law should control, because the only negligence alleged in plaintiff's complaint was defendant's failure to warn her of the defective condition of the tire and this negligence first occurred in this State, is without merit. If defendant was guilty of negligent failure in that regard, the same negligence continued right up to the moment of the accident. Moreover, defendant could not become liable until the accident and resulting injury occurred, and it is well established "that in law the place of a wrong is in the State where the last event takes place which is necessary to render the actor liable for an alleged tort." *Farmer v. Ferris,* 260 N.C. 619, 627, 133 S.E. 2d 492, 498; see Annotation, Conflict of Laws—Place of Tort, 77 A.L.R. 2d 1266, and Restatement, Conflict of Laws 2d, § 146. Accordingly, we look to the laws of South Carolina for determination of the substantive rights and liabilities of the parties in this case.

The first question presented is whether the South Carolina Automobile Guest Statute is applicable under the circumstances of this case. That statute, § 46-801, South Carolina Code of 1962, in pertinent part reads as follows:

"§ 46-801. *Liability for injury to guests in car.*—No person transported by an owner or operator of a motor

vehicle as his guest without payment for such transportation shall have a cause of action for damages against such motor vehicle or its owner or operator for injury, death or loss in case of an accident unless such accident shall have been intentional on the part of such owner or operator or caused by his heedlessness or his reckless disregard of the rights of others."

Looking to the laws of South Carolina, we find this statute applicable in the present case.

[2-4]  South Carolina, like our own State, recognizes the right of a wife to maintain a tort action against her husband to recover damages for her personal injuries caused by his actionable negligence. *Pardue v. Pardue,* 167 S.C. 129, 166 S.E. 101; *Oshiek v. Oshiek,* 244 S.C. 249, 136 S.E. 2d 303 (recognizing rule). The Automobile Guest Statute has been held applicable by the South Carolina Supreme Court in cases brought by a wife against her husband to recover for injuries received by her while riding in his automobile, thereby tacitly recognizing that a wife, no less than a stranger, may under appropriate circumstances occupy the legal status of "guest" within the meaning of the statute. *Guyton v. Guyton,* 244 S.C. 357, 137 S.E. 2d 273; *Jackson v. Jackson,* 234 S.C. 291, 108 S.E. 2d 86; and see Annotation, 2 A.L.R. 2d 932. While we have found no decision of the South Carolina Supreme Court dealing with the factual situation in which the guest assists in driving the vehicle, at least one court, applying South Carolina law, has held that the mere fact that the plaintiff assisted with the driving would be insufficient to change the status of the plaintiff from that of "guest" within the meaning of the statute. *Kaufmann v. Huss,* 59 N.J. Super. 64, 157 A. 2d 338. This holding is in accord with substantial authority from other jurisdictions having similar statutes, particularly where the circumstances surrounding the parties indicate that the considerations inducing the offer of transportation to the occupant were primarily those of hospitality or sociability. 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 479; Annotation, 39 A.L.R. 3d 1083, Automobiles—Guest Statute—Noncash Payment, § 9(c), p. 1109. It is true that the case now before us presents an unusual factual situation in that plaintiff was driving at the moment the accident occurred, but we see no logical reason why this fact should change her status as a person who was being furnished transportation by the owner of the vehicle "as his guest without

payment for such transportation" within the meaning of the statute, if the other circumstances were such as to indicate that she held that status. Thus, on the basis of the foregoing authorities it is our opinion that under applicable South Carolina law the mere facts that plaintiff was the wife of defendant and that she was the driver of her husband's vehicle at the time the accident occurred did not preclude her from being his "guest without payment" within the meaning of the South Carolina Automobile Guest Statute. The question remains as to whether, under all of the circumstances disclosed by the evidence in this case, she did occupy that status. In this connection, while we find no controlling South Carolina decision on the matter, "it appears to be a well-accepted principle that the occupant of the vehicle who claims that the guest statute is not applicable has the burden of proving that his status was other than that of guest." Annotation, 24 A.L.R. 3d 1400, 1402; *accord, Frisbee v. West, supra.* In the present case we find no evidence to indicate that plaintiff occupied any status other than that of a "guest without payment." Indeed, all of the evidence indicates she was her husband's guest within the meaning of the statute when the accident occurred. The vehicle belonged to him and was used by him in his business, in which she had no ownership interest. Only rarely did she accompany him while he used the vehicle for business purposes. Both plaintiff and defendant testified that on the occasion in question defendant "invited" plaintiff to accompany him, an expression ordinarily used to connote a courtesy extended by a host to a guest, and all of the evidence indicates that she accepted the invitation solely for purposes of sociability and companionship. There being no evidence to indicate otherwise, under the circumstances of this case plaintiff must be considered as having been defendant's "guest" at the time of the accident in which she was injured.

[5] Finding, as we do, that the South Carolina Automobile Guest Statute applies in this case, plaintiff may not prevail upon a mere showing of simple negligence. She must show that the accident which caused her injury was either intentional on the part of defendant, as to which there was clearly no evidence, or that it was "caused by his heedlessness or his reckless disregard of the rights of others." Whether, under the substantive law of South Carolina, the evidence was sufficient to require its submission to the jury is determinable in accordance with the procedural law of this jurisdiction. *Kirby v. Fulbright,* 262 N.C. 144, 136 S.E. 2d 652. Accordingly, we apply our well-established

rule (which apparently is also the rule applied in South Carolina, *Guyton v. Guyton, supra)* that the evidence must be considered in the light most favorable to the plaintiff. When all of the evidence in this case is so considered, we find it insufficient to warrant submitting to the jury an issue as to whether the accident was caused by her husband's "heedlessness or his reckless disregard of the rights of others," as those words have been interpreted by the South Carolina Supreme Court.

In applying the statute the phrase "caused by his heedlessness *or* his reckless disregard of the rights of others" must be construed to read "caused by his heedless *and* reckless disregard of the rights of others." *Fulghum v. Bleakley,* 177 S.C. 286, 181 S.E. 30. Action or conduct in reckless disregard of the rights of others constitutes wanton misconduct, evincing a reckless indifference to consequences to the life, limb, health, or property rights of another. *Fulghum v. Bleakley, supra.*

[6] Viewing the evidence in the light most favorable to the plaintiff, we find that while it might be sufficient to warrant a jury finding defendant guilty of simple negligence in continuing to operate his vehicle when he knew one of the tires was "kind of slick" and was "worn down right bad," the evidence was not sufficient to support a verdict that defendant was guilty of any wanton misconduct such as to evince a reckless indifference to the safety of others. *Saxon v. Saxon,* 231 S.C. 378, 98 S.E. 2d 803, cited and relied on by both parties, in our view supports the defendant's position rather than that of the plaintiff. That case, as this one, involved an accident which occurred when a weak truck tire blew out. In *Saxon,* however, in addition to the condition of the tire, there was evidence that defendant drove his truck with a shifting cargo on a very hot day—98 degrees—at a high rate of speed, and in disregard of warnings of his guest. The court held such evidence sufficient for submission to the jury upon the issue of defendant's heedlessness and recklessness, in so doing laying stress upon the excessive speed with which defendant drove "especially under the circumstances of his weak tire and his shifting load." Nothing in the opinion suggests that the court would find evidence of heedlessness and recklessness sufficient in a case such as is now before us where the only evidence of any negligence on the part of defendant is that he continued operation of his vehicle after he knew one of his tires was slick.

We find defendant's motion for a directed verdict was properly allowed, and the judgment dismissing plaintiff's action is

Affirmed.

Judges CAMPBELL and MORRIS concur.